IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. KINNAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID E. KINNAN, APPELLANT.

Filed April 14, 2026.    No. A-25-658.

Appeal from the District Court for Madison County: MICHAEL L. LONG, Judge. Affirmed.

Bradley A. Ewalt, of Ewalt Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

MOORE, BISHOP, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

David E. Kinnan appeals from his plea-based conviction of possession of methamphetamine. He contends that his trial counsel was ineffective "by forcing him to plead no contest to a plea offer" and "in giving him incorrect advice about L.B.50 as it pertained to [Kinnan's] sentence." For the reasons set forth herein, we affirm Kinnan's conviction and sentence.

### STATEMENT OF FACTS

Kinnan was originally charged with possession of fentanyl and possession of methamphetamine, both Class IV felonies. Pursuant to a plea agreement, Kinnan pled no contest to possession of methamphetamine. As part of the plea agreement, the State dismissed the charge of possession of fentanyl and agreed to recommend a sentence of 12 months' imprisonment.

- 1 -

The State supplied the factual basis, which set forth that on March 20, 2025, law enforcement received a report about an individual who was yelling and disturbing the peace. Officers contacted the individual, identified as Kinnan, and asked for consent to search his person. Kinnan asked if he could lay out all the items he had in his pockets because he had post-traumatic stress disorder. He then handed the officer a black glasses case containing a dismantled pen with a white crystalline substance, which was determined to be methamphetamine. The court found him guilty of the charged offense and, after Kinnan waived the presentence investigation, the case proceeded directly to the sentencing.

The State set forth that Kinnan's prior criminal history included six convictions for disturbing the peace; four convictions for third degree domestic assault; three convictions each for DUI, third degree assault, and criminal mischief; two convictions for resisting arrest; and single convictions for attempted possession of a controlled substance, criminal trespass, failure to appear, terroristic threats, assault by a confined person, open alcohol container, obstructing a peace officer, violation of a protection order, driving during suspension/revocation, second degree forgery ($0-$500), attempted possession of a controlled substance, attempted forgery ($500-$1,500), carrying a concealed weapon, and theft by unlawful taking ($1,500 to $5,000). The State also noted a 2025 criminal trespassing charge from Colorado but expressed uncertainty regarding whether that case had been resolved. The court acknowledged that Kinnan was 43 years old and Kinnan informed the court he had attended high school and earned dual credits. Kinnan admitted that he had been using methamphetamines for about 10 years.

The court acknowledged that Kinnan had a "fairly significant" criminal history, which weighed against a sentence of probation. The court went on to find that, based on Kinnan's criminal history,

> substantial and compelling reasons exist why you could not be safely supervised in the community on a period of probation. And finally, I'll find that a period of probation would depreciate the seriousness of the offense. The law is still in the books. We've got to enforce possession offenses. So I think it would promote disrespect for the law if I put you on probation, and I also find that based on the history, that you would engage in additional criminal conduct if I put you on probation.

The court sentenced Kinnan to 1 year of imprisonment with credit for 131 days previously served, which was later modified to award 132 days of credit for time served.

After the court announced Kinnan's sentence, Kinnan asked the court if he was "going to be under [L.B. 50] like [defense counsel] told me to accept this deal?" After the court responded that it was uncertain and that Kinnan would need to confer with his defense counsel, Kinnan stated, "Because that's the only reason I took the deal" and "the whole reason I was taking [this deal] is because [defense counsel] told me [L.B. 50] was going to apply, and I'd be out in a couple [of] days." Kinnan then said, "That's not my understanding of [L.B. 50]. It's on a dual sentence where it's like 12 to 18. I told you. I just got tricked, man. I told you I had trust issues." The court responded that "if you believe you got tricked, I will vacate [the] sentence" and "[y]ou can withdraw your plea." At that point, Kinnan asked, "[C]an we just have a recess and find out if [L.B. 50] applies or something, maybe?" The court acquiesced recessing until 1 p.m. to allow Kinnan "an hour and a half to talk to his attorney." Following the recess, court reconvened, and

defense counsel advised the court that Kinnan had agreed to "stand on the sentence," which Kinnan verbally acknowledged. Kinnan has timely appealed and is represented by new counsel.

## ASSIGNMENTS OF ERROR

Kinnan assigns as error that his trial counsel was ineffective "by forcing him to plead no contest to a plea offer" and "in giving him incorrect advice about L.B.50 as it pertained to [Kinnan's] sentence."

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

Both of Kinnan's claims on appeal relate to his trial counsel's alleged ineffectiveness. Accordingly, we first review the principles governing claims of ineffective assistance of counsel on direct appeal.

In *State v. Swartz*, 318 Neb. 553, 566-67, 17 N.W.3d 174, 184-85 (2025), the Nebraska Supreme Court reiterated the propositions of law relative to a defendant's claims of ineffective assistance of counsel made in a direct appeal:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*[, 318 Neb.] 352, 15 N.W.3d 705 (2025).

> Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)], the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dat*[, 318 Neb.] 311, 15 N.W.3d 410 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

> An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Here, Kinnan assigns as error that his trial counsel was ineffective "by forcing him to plead no contest to a plea offer" and "in giving him incorrect advice about L.B.50 as it pertained to [Kinnan's] sentence." We find the first claim is refuted by the record but that the record is insufficient to address the second claim. We will address those assignments independently.

Regarding Kinnan's claim that his trial counsel was ineffective "by forcing him to plead no contest to a plea offer," the following colloquy that took place between the court and Kinnan during the plea hearing:

THE COURT: . . . Has anybody made any threats or any kind of promises here today, other than your plea agreement, to get you to plead no contest to [possession of methamphetamine]?

[Kinnan:] No, they have not.

THE COURT: Okay. Are you pleading no contest freely and voluntarily?

[Kinnan:] Yes, I am.

. . . .

THE COURT: . . . Have you had enough time to discuss this case with your attorneys?

[Kinnan:] I have.

THE COURT: Have you had enough time to think about the plea agreement before pleading no contest?

[Kinnan:] Yes, I have.

Kinnan advised the court that no one had made threats or promises, other than the plea agreement, in order to get Kinnan to enter his plea; he admitted that he was entering his plea freely and voluntarily; that he had a sufficient amount to time to discuss his case with defense counsel; and that he had sufficient to think about the plea agreement prior to entering his plea. As the Nebraska Supreme Court held in *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013), when allegations of ineffective assistance of counsel are affirmatively refuted by a defendant's assurances to the sentencing court, there is no basis for relief. In so holding, the court cited a prior opinion where it had stated:

If the dialogue which is required between the court and the defendant ... all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*Id.* at 118-19, 835 N.W.2d at 58 (citing *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)). Accordingly, we find that Kinnan's assignment that his counsel was ineffective by forcing him to enter a plea is refuted by Kinnan's statement to the court that no such threats were made.

- 4 -

Regarding Kinnan's claim that his trial counsel was ineffective "in giving him incorrect advice about L.B.50 as it pertained to [Kinnan's] sentence," the record established that after Kinnan was sentenced, he raised questions regarding the application of L.B. 50 to his sentence and stated that "the whole reason I was taking [this deal] is because [defense counsel] told me [L.B. 50] was going to apply, and I'd be out in a couple [of] days." After Kinnan expressed concern and confusion regarding the application of L.B. 50, the court offered to vacate Kinnan's sentence and allow Kinnan to withdraw his plea, but instead Kinnan requested a recess to confer with his attorney about whether L.B. 50 applied to Kinnan's case. The court recessed for an hour and a half to allow Kinnan and his attorney to consult. After the court reconvened, defense counsel advised the court that Kinnan had agreed to "stand on the sentence," which Kinnan verbally acknowledged.

Although the record indicates that Kinnan expressed concerns about how L.B. 50 would operate in connection with his sentence, the court informed Kinnan that he could withdraw his plea and recessed to give Kinnan time to resolve the issue with his counsel. After the recess, defense counsel informed the court that Kinnan was "going to stand on the sentence," which Kinnan verbally acknowledged. But we have no record of what exchange took place between Kinnan and his counsel that led to Kinnan's desire to proceed. Without a record of this conversation, we find the matter cannot be addressed on direct appeal and the claim is preserved for postconviction review.

CONCLUSION

Having found that Kinnan's assignment of error that his counsel was ineffective for forcing him to enter a plea fails and that his assignment of error that counsel was ineffective for giving him incorrect advice about L.B. 50 could not be addressed on direct appeal and is preserved for postconviction review, we affirm Kinnan's conviction and sentence.

AFFIRMED.